All rise. The Illinois County Courtship Division is now in session. The Honorable Justice Raymond W. Mitchell is presiding. Good morning, folks. Please be seated. If our clerk would call our case for today. 125-0218 in the grade S.R. Good morning, counsel. We've reviewed the briefing and record and appeal as well as the authorities, so you can certainly take that into account in your presentations. We're going to lock 20 minutes aside with an additional 5 minutes for the appellants. You don't need to reserve time. When you step up, please be sure to identify yourself and keep your voice up because the microphone, they say it doesn't amplify, but I think it kind of does. But it does record. It doesn't amplify well, but it does. So with that, we'll get started. Counsel for the appellant. Good morning. May it please the Court. My name is Christina Law Merriman, and I represent S.R. as the minor respondent. S.R. was prosecuted and sentenced as a violent juvenile offender, a VJO. As a result, S.R. was committed to the Illinois Department of Juvenile Justice, IDJJ, for 12 months longer than a regular commitment. But this case never should have been a VJO case to begin with. We raised several issues in this appeal concerning the VJO provision, but I'd like to begin with the second issue because if relief is granted on those grounds, this Court may not need to reach the remaining issues concerning the VJO petition. The trial court erred in denying S.R.'s motion to strike the VJO notice and allowing the State to prosecute S.R. as a VJO because his admission of guilt in the alleged predicate case was insufficient to qualify him for VJO prosecution. To be prosecuted as a VJO, a minor must have been previously adjudicated as a delinquent minor for a qualifying offense. Here, the State alleged that S.R. was eligible to be prosecuted as a VJO based on his admission of guilt in a prior case. But that prior case was still pending. It was still awaiting an adjudicatory hearing and still awaiting a dispositional hearing. Thus, the question before this Court today is whether a determination of guilt alone, absent a final judgment, may be used as a predicate under the VJO statute. In answering this question, it's important to understand the three phases of delinquency proceedings. The first stage is the findings phase, and this is where there's a determination of guilt. This can be done either at trial or through a guilty plea. And if there is a finding of guilt, the case proceeds to the adjudicatory phase, where the Court decides that the minor should be adjudicated to the Court. Notably, at this stage, the Court still has the authority to dismiss the petition if it finds that Wardchip is not in the best interest of the minor. There's a judicial clause in the case law that equates a finding of guilt with a finding of delinquency. So doesn't that defeat your argument? Your Honor, yes, a finding of guilt can also be interpreted as an adjudication of delinquency. However, that was not a finding delinquency judgment. Our position is that a final delinquency judgment is required under the VJO statute in order to be used as a predicate. And that's precisely what occurs in the criminal court system. For instance, under the habitual criminal statute, which is a similar sentencing provision, that requires a final judgment of conviction. In interpreting an analogous provision, the habitual juvenile offender statute, we've rejected that argument, right? I believe Your Honor is referring to In Re Esti, where this Court found that an adjudication of delinquency is sufficient for a predicate under the HJO statute, which is, again, a similar statute, but not the one that this Court is dealing with today. However, this Court also addressed what is necessary for a predicate under the VJO context in In Re Mg. There, this Court upheld the constitutionality of the VJO statute, and in reaching that conclusion, this Court emphasized that it was important that the minor go through the entire delinquency process. This Court explained that the rehabilitative purpose of the juvenile court system was not forsaken by the VJO statute, precisely because the minor in the predicate case had the opportunity to present mitigating evidence at a sentencing hearing, the judge had discretion to impose a disposition that it felt was appropriate, and then the minor had the opportunity to begin that disposition. And so for those reasons, this Court found that the VJO statute was constitutional and that the legislature could legitimately conclude that if a minor had benefited little from those prior services in the predicate, if the minor then, after disposition, committed another violent offense. That reasoning cannot be squared with In Re Esti, where if this Court were to adopt the reasoning in In Re Esti and allow a finding of guilt absent a final judgment, then it's possible that judges can sentence minors as a VJO, which carries a mandatory lengthy prison sentence where the court does not have any discretion, as a minor's very first sentence in juvenile court. And that cannot be what the legislature intended in passing this statute. And indeed, that's not what this Court said in upholding the constitutionality of this statute. It was important that it reach a final judgment and that minors and judges have that opportunity to exercise discretion and have that rehabilitative opportunity. So your position, if I understand it correctly, is that in order to be adjudicated a delinquent minor, findings alone are insufficient. Adjudication alone, or in combination with findings, are insufficient. You need all three phases. The dispositional phase too? Yes. The judgment has to be final. And that's because a finding of guilt, when a case has just reached the findings phase, the case is far from final at that stage. A motion for a new trial could be filed. Perhaps there could be a motion to withdraw a guilty plea. And then, as stated earlier, at the adjudicatory phase, where the court decides whether the minor should be made a ward of the court, the court actually still has the authority to dismiss the petition entirely and discharge the minor. And so it would be unreasonable to allow the state to use, as a predicate offense, a finding of guilt that is so far from final when so much could happen. And because the minor is facing a lengthy, mandatory sentence where the judge has no discretion, it would be unreasonable to allow the state to use just an admission of guilt to seek that enhanced sentence. So, counsel, what cases do you rely on that specifically speak to the finality of the prior disposition? In Ingram G., where this court upheld the constitutionality of this statute, the BJO statute, the court obviously was a different issue because it was a constitutional challenge. But in finding that it was constitutional, this court talked about reaching the sentencing phase and the ability to present mitigating evidence and the judge's discretion and the imposition of a disposition. And so, logically, this court believed that those steps were necessary in order for this statute to be constitutional. So to require less, perhaps this court may not have found the statute unconstitutional if we're only requiring a finding of guilt where those stages are not met. It wasn't that discussion. It was bound by the facts of the case because that's what had happened in that case. It wasn't parsing the meaning of what adjudicated a delinquent minor means, right? That's correct. That's what had happened in that case. I think what happened in that case and also what happened in NRASP is that those minors, their predicates had reached a final disposition. And that's what makes this case different from NRASP. In NRASP, the minor had been adjudicated a ward of a court and sentenced to probation before the state filed the HJO petition. So the issue there was slightly different. It was a matter of whether the second predicate happened after the first because the ward determination happened on the same date. But that minor had gone through the entire delinquency process, had presented mitigating evidence. The judge did exercise discretion and was sentenced to probation. Whereas here, we're in a situation where this minor was not afforded that opportunity. Well, in part because he cut his ankle bracelet off and he absconded, right? He would have been sentenced had he not done that. Yes, he was sentenced for sentencing. And I recognize that those are the facts of this case. However, this court's interpretation will affect other minors in this district. And so adopting the reasoning in FP and allowing the finding of guilt to be sufficient would create a situation where the state can seek VJO sentences for minors who do show up in court and are still pending sentencing on the predicate. And, indeed, it doesn't require the judge to sentence the minor on the predicate before proceeding to sentencing on the VJO. And so a minor could be sentenced to a mandatory VJO sentence as its very first sentence in juvenile court. And that simply conflicts with the rehabilitative aims of the Juvenile Court Act and conflicts with the court's reasoning in NRAMG when it upheld the constitutionality of the statute. And so we ask this court to find that the trial court erred in denying SR's motion to strike the VJO notice and allowing the state to seek this enhanced sentence based on a finding of guilt that was still pending litigation. And to remedy this error, we ask this court to vacate the VJO finding and reduce SR's sentence to a regular commitment on the initial petition. Now I'd like to move on to address the fourth issue concerning custody credit. If there's no other questions about the second issue. Is there a question of mootness here? Your Honor, there's not. SR is still on aftercare. And as the state really conceded in its response brief in NRAMG, this court found that when a minor is on aftercare and is seeking sentence relief as SR is here, the issue is not moot because he can still obtain relief. He can shorten his aftercare term. If he's violated on aftercare, it would affect his recommitment to DJJ. And so it is not moot. Now it is undeniable that SR was physically in custody from the day of his arrest until sentencing. Yet the court denied SR's sentencing credit for that full amount of time that he was physically in custody. At SR's initial... If we agree with you on that, what's the most we can do for your client? The most you can do for my client is to correct the sentencing order or commitment to DJJ to reflect 139 days of pre-sentence credit, which we believe he was entitled to. And nothing more wrongly denied him. I struggled with this issue in the briefs in terms of the very basic statutory authority that you were relying on. So can you just give me a snapshot? Yes, it's Section 5-710B of the Juvenile Court Act, which provides that courts must include in the sentencing order any pre-custody credits the minor is entitled to under Section 5-4.5100 of the Unified Code of Corrections, which states that a defendant shall be given credit for the number of days spent in custody as a result of the offense for which the sentence is imposed. And so that was precisely what SR and his defense counsel was trying to achieve, was to get the judge to order his detention in this case so that he could obtain sentencing credit under these statutes. And the judge here specifically declined to do that repeatedly, and he held him on the prior case but not this case until after the second case was adjudicated. That's correct. And it's your position that the trial judge just doesn't have discretion to do that? I think the court has discretion within limits, and I think here there was no valid reason. I'm not sure I actually can think of a valid reason for which a court would deny credit. Because the basis to hold him on one case would be the basis to hold him on the other case. In the juvenile court context, yes. Because the only basis for a judge to detain a minor in juvenile court, if there's an urgent and immediate necessity for the safety of the minor, another person, or property, or if there's a flight risk. For those factors, if they're present in one case, they would necessarily be present in the other. Exactly. They're not specific to any case. They lie with the minor, and so for those reasons, it was unreasonable for the judge to deny this request when the court presumably is making that finding on the other petition. And then the court committed SR to IDJJ, which for similar reasons found that it was necessary. The most secure level of confinement we have in this state was necessary, and so if those risks existed, the court had no reason to deny SR's request. And the request to be held in this case can be analogized with a motion to withdraw bond or exonerate bond under the old bond system in criminal court. And there, at least one appellate court in People v. Hatchet, the 5th District, found that it was error for a judge to deny a motion to withdraw bond in this context, stating no valid, or really any reason, for denying the request. And there really cannot be a valid reason, because all that is happening is the judge is denying a person custody credit for time that they are physically in custody. Our Illinois Supreme Court, in kind of setting out the circumstances for which a defendant is in simultaneous custody, said that courts cannot ignore the reality of being in custody in one case and being released in another. And that's what happened in this case. SR was physically in custody for every single day that this case was pending, and despite trial counsel's relentless request from the day that the court released SR in this case, she asked that her client be held. And she recognized that this was required of her to be effective assistance of counsel, as the appellate courts across this state have found that it is ineffective for trial counsel not to make this request. And she was not. She repeatedly asked. And I think that the court's ultimate decision when it did detain SR in this case, after he was about to be released from IDJJ, is telling. It shows that this court, or not this court, that this judge believed that detention was always necessary, because he never let SR leave custody and made sure that even after the DJJ commitment was about to end, to detain him in this matter. Can I go back to your first argument? You know, as I'm thinking about your first argument today and your first argument in your brief, I'm wondering if there's certain irony there. Because in your first argument today, you contend that there was no prior or qualifying prior adjudication because finding of guilt alone is insufficient. You need to go through all the steps to get aid. You need to go through disposition. But yet, in your first argument, in your briefs, which is that the court erred by not permitting your client to plead guilty on his first appearance, don't you have the same issue that you don't really have an adjudication? Presumably, your client had a good lawyer, and he understood the risk that your client faced if the court takes into account that prior adjudication. So the lawyer says, plead guilty today, and we can avoid that, right? But don't you have the same issue that, well, it's just a finding of guilty? It's just a plea of guilty. You don't have an adjudication, as you've been talking about today. Is there some irony there or some inconsistency, perhaps, in your argument? I don't think there's any irony. You know, SR, with the assistance of counsel, made a strategic and informed decision to wish to plead guilty on his initial court date, and the court refused, not because it was unknowing or involuntary, but because the court didn't think it had jurisdiction to proceed. Now, I don't think that there's any irony. I guess my point is this. Let's say the court will have him to plead guilty, right? But as you've argued, it's just a plea of guilty. It's not an adjudication. So, you know, would that plea have preempted, as a matter of law, the court's ability to adjudicate your client as a VJO, as you've been arguing today, because there's no disposition yet? I think at that stage, at that initial court date, at that first appearance, there had not been a VJO notice. And so, yes, I think SR pleaded guilty under those – excuse me, sorry. I was just going to say, the state, didn't he have an opportunity to – I mean, he was brought in the same day, correct, that he was arrested? That's correct. So it was sort of a race to the courthouse strategy. I think perhaps he was arrested on the 7th and then on the next day was in court. But the state did have time to prepare a petition and did not file the VJO notice until after court had ended for that day. Under the facts that were before the court on that day when SR wanted to plead guilty, there was no VJO notice pending. And so the trial court, without absent a notice or absent the state seeking that sentence, could not have sentenced SR as a VJO under those circumstances. Well, the state could have said, well, it's just a plea of guilty, Your Honor. There's no disposition yet. There's no – under the statute, as you've argued. And so, you know, the fact that we didn't file that notice before he pled guilty is irrelevant. We still have time to do it. We could do it until there's a disposition. I think that is an open question that has never been decided by any appellate court in this state. And it's possible that the state would have chosen not to file that VJO notice if the court had accepted the plea. It's possible that the state would have accepted that SR pled guilty on the first date, saving the state time. Or the state would have made the same argument you're making today. Excuse me? Or the state could have made the same argument you're making today that, you know, a plea of guilty is not sufficient under the statute. The language is adjudicated delinquent minor. He's not actually adjudicated delinquent minor until there's a disposition. So we have time to file our notice. That's the irony I'm trying to get to. I understand. I understand Your Honor's point. I think that question has not been addressed ever by the appellate court. I think it remains an open question that perhaps needs to be litigated. But that's not the question that is before this court with respect to the guilty plea. Because the judge, the only reason the judge gave for refusing to accept the plea was that he believed that he needed personal or jurisdiction over the parents to accept that plea. Or that other, or the judgment down the line would be voidable. And that simply was wrong. That is to say, absent personal jurisdiction over the parents, there would be a risk if he had accepted the guilty plea that it could impinge upon the parents' custodial rights to be adjudicated later once the court had jurisdiction over them. Right? That's a very real practical concern that the trial judge, I think, identified. Well, the trial judge cited to In Re R.S., which was explicitly overruled by the Supreme Court in In Re M.W. in 2009. And in that case... So, no question, the court had subject matter jurisdiction. But my question is, even still, the case will certainly recognize that there's a question of personal jurisdiction over the parents. And if a trial judge takes a plea from a juvenile in the absence of personal jurisdiction over the parents, is it at least possible that at some later court date the parents would come in and say, we object to this. This plea should not have been taken because it potentially affects our rights. And we have a due process right here. So, in that situation, doesn't it make perfect sense that the trial judge would just wait until there was personal jurisdiction over the parents? Okay, I want to address a few things about what Your Honor stated. First, yes, parents do have a due process right and do not have proceedings. And that right really attaches at the worship stage. And that's when personal jurisdiction is required over the parent, is at that adjudicatory case. Because that is when a parent's custodial rights are at stake. Not at the finding of guilt stage. That's when the court decides that the parents... You know, it's... To be there on the landing, you've got to be there on the takeoff, right? And the takeoff is effectively when the juvenile makes the decision to plead guilty. And isn't it... I mean, don't you think that's a pretty significant decision for a juvenile to make? Wouldn't it, just as a practical matter, make sense that he has the benefit of his parents' insights and a conversation about that before he makes such an important... He or she makes such an important decision? The law does not require that a parent be present. The only requirement in juvenile court... Or the only requirements in juvenile court for a guilty plea to be accepted is that minor... It's very clear that the minor has to be represented by counsel. That occurs here. And that the plea be knowing and voluntary. There was no... The judge did not seem to have any concerns with those requirements. And the judge was only concerned about having jurisdiction, which I think we can... You know, from what he said... Let's assume it was not a jurisdictional matter. But would you concede that it's a discretionary matter? Whether... The decision whether to accept a guilty plea is a matter of discretion. So, given that under the law, the parent-child relationship is one of the most sacrosanct values that the law recognizes, how can it be an abuse of discretion for the judge to say, Well, look, it's the first time you've performed a... Putting aside the judge's actual reasonings, couldn't the judge have thought that, I want to get the parents in there. I want them to make sure that they have an opportunity to talk to their son. How can that be an abuse of discretion? That was not the circumstances in this case. The court stated that he was concerned about jurisdiction, not about consulting with the lawyer. But he was also concerned about the parents not being present, so... Because of the jurisdictional implications and the potential for the judge's later deadline to be void. Do they also have competing interests? Because the parents have an interest in custody over this minor, and the minor is then conceding custody to the state, essentially. At this stage, at the finding stage, there is no concession of custody. That's why the separate phases... It's a step on the path. It's a step on the path, but the critical stage is at the adjudicatory phase. And that's what the Illinois, not the Illinois Supreme Court, the U.S. Supreme Court said in Galt, when a parental's custody interests are at stake, that's when it's required that parents be present or have proper notice. But the decision to plead guilty belonged to SR, and every other minor that's accused of an offense, and every defendant. It was his decision and his decision alone. There is no requirement that he consult with his parent before making that decision. There are certain decisions in juvenile court that still remain with the minors, just like they do with defendants in criminal court. He makes the decision whether to go to trial. He makes the decision whether to plead guilty. And in this context, he makes the decision whether to take a jury or to take a bench if he decided to take this case. There is no requirement, no case that I'm aware of, that requires a minor to consult with his or her parent or guardian before making the decision to plead guilty. So are you suggesting that the parent's interests are not necessarily relevant until the sentencing phase? Not relevant with respect to jurisdiction, yes. And I think any speculative harm to the parents cannot outweigh SR's interest, his strategic and informed decision to plead guilty at this initial court date. Perhaps his parents may complain later, but that can't outweigh his interest on this new court and his desire to plead guilty after consulting with the lawyer and making that decision. The court's decision to refuse to let him plead would have no basis in the law, and I think your honors understand that, that NRARS is being overruled explicitly. There was personal jurisdiction over SR. There was subject matter jurisdiction, and that's all that was needed for the court to proceed. To find otherwise would really stop juvenile proceedings. That would mean that the judge couldn't accept the non-guilty plea that was first entered, could not make a finding of probable cause. But we allow delinquency proceedings to proceed in the absence of the parents until we get to that adjudicatory phase where their interests are at stake and where personal jurisdiction, because that warchip order does affect them, and that's what personal jurisdiction requires. I think we're a little over, so one more minute to wrap up, and then we'll hear from you and move on. If there are no further questions on any of the remaining issues, I know I did not touch on all of them in my initial argument. Because this case never should have been a BJO case, and because SR was entitled to credit for every day he spent in physical custody in this case, we ask this court to grant relief requested in our brief. Thank you. Counsel, whenever you're ready. Thank you, Your Honor. May it please the Court. Counsel. Good morning. My name is Assistant State's Attorney Paul E. Wozicki, W-O-J-C-I-C-K-I, here on behalf of the people. This absolutely should have been a BJO case. The BJO statute was as follows. It added to the JCA to create a special class of juvenile offender. It recognizes that certain juvenile offenders are unlike other juvenile offenders. Those covered by the BJO statute are those who have demonstrated violent tendencies, engaged in violent acts. And the legislature now has put in the statute that says they are going to be treated differently. And that is wholly consistent with the act's purposes, because while the act's purpose of rehabilitation and development and delivering services to the minor remains, there's also a declared purpose to protect society from violent minors and to hold violent minors accountable for their actions. That's why this was and always should have been a BJO case. This was this particular minor's fourth weapons firearm offense, second machine gun offense in a very short period of time. So this absolutely was appropriate for BJO treatment. And in a BJO setting, the rehabilitative services are delivered, but they're delivered in IDJJ. So you have to balance. It's a balancing. We're going to balance the delinquent minor's need for services with the public's need for protection. Counsel, can you address the opposing counsel's argument that the real issue is the timing, that the predicate offense had not been completed? Sir, as Justice Mitchell pointed out, we've got a decision on the books. We've got a couple that construed identical language in the HJO, the habitual juvenile offender statute, that defines delinquent adjudication as a separate distinct concept. It is a finding of guilt or plea of guilty. Once that adjudication has occurred, the statute is triggered. Again, we are not talking about an adult criminal proceeding. This isn't even a criminal proceeding. A juvenile proceeding is not criminal. So we've got a whole new, separate, special, unique statutory mechanism and scheme that applies to juveniles. And this court has construed that, drew the language, the adjudication of delinquency to me in the HJO statute to mean simply that finding at the guilt phase and not requiring the subsequent either a disposition or sentencing. So what if the guilty finding is vacated on the juvenile's motion? Then the case should be dismissed. But what about, how does that affect this case? How does it affect this case? How does it affect the, we're talking about the predicate case, correct? Right. And so if there's, we're making a finding of VJO based on a finding of guilt in the predicate case, correct? Correct. But that, you know, it's still not a final disposition. All kinds of things could happen before finality. Well, I think that's enough sort of trick, you know. How do we manage this practically, I guess is the question. Well, I think we can only deal with the situation as it presents itself at the time. So we've gotten what the legislature has said. We're going to look at whether or not there's been multiple juvenile delinquency adjudications for Class II firearm offenses. And if that's the case, the VJO statute would be triggered. Now, a lot of things could happen, but the court has got to make decisions consistent with the statute based on the facts as they present themselves at the time. If something changes, then the court is going to modify the situation by entering a new order, releasing, dismissing. I mean, again, the... So, yeah, it's really a focus on the word adjudication, right? We're not looking at a delinquent minor. We're looking at adjudication. What does that mean? I think in your dictionary definition, one might look at adjudication and say, well, it's a final conclusion as opposed to a step in the final conclusion, such as a guilty delinquent. Right. Well, I think the JCA takes care of that for us because it creates three distinct phases of the juvenile justice process. Okay. And the first phase is that finding space where there is an adjudication of delinquency. Multiple adjudications are made. The first to be made is an adjudication of delinquency because that triggers whether or not there's a need for the second and third adjudication, but they may not even be necessary because after the first adjudication, the court can still dismiss the petition if it's found to be in the best interest of the minor. So you're saying there's three adjudications in any juvenile case, not one adjudication? There are three phases. Right. And a wardship issue is an adjudication, the ultimate disposition is a form of adjudication. So our court has taken a position that this adjudication, in the context of the habitual statute, that this language has a specific meaning which attaches merely to a finding of guilt. And that's been in a published decision, a couple of published decisions of our court for over 25 years. And in light of that judicial gloss, the General Assembly has taken no action to amend the statute if that was wrong. It's done nothing like that. Precisely. The legislature is presumed to know the law to stand on top of decisions, and if they felt the court misinterpreted, it would have been incumbent upon them, and surely they would have taken such action to modify the law to overturn the decision. Real tragical question, and this is just to help me understand these juvenile proceedings. Even in the absence of a VJO notice, the trial judge here would have had discretion to impose the sentence that he did, irrespective. Yes. Yes. And so the only issue is the mandatory element. That's what changes in a VJO situation. But the sentence of committing him to detention actually very well might have been reasonable in light of the fact that, well, he had cut his ankle bracelet off when he was released on the other case. Oh, absolutely. I mean, right. Looking at the facts, in this case, like I said, we have four firearms charges. We have the fleeing, avoiding sentencing, cutting off the ankle monitor. The law is made to ensure that the defendant actually benefits from the rehabilitative services of the juvenile court. One way to actually ensure that would be to detain him. Right, to make sure he actually gets those services. And a way to do that is through detention. Can you speak to the last issue, since we are talking about detention? What? Counsel's position seems to make perfect sense, that he's detained on one case, he's detained on all, and he should get credit for the entire period he's in detention. Well, again, I see the logic to that, but it's also the case that this individual minor had multiple cases, and the court has discretion over how to... But it's always the case when we're talking about sentencing, it's credit, right? True. And the court would always have the discretion, if appropriate, to... But, you know, in some instances, the later-in-time offense may not be as serious as the first-in-time offense, but the underlying finding may still exist because of actions connected with the prior offense. But the finding required to hold juvenile is not charge-specific, rather it's juvenile-specific, right? I think that's a logical position. Let's talk a moment about, if I can move on, to the parents' rights. Okay? I don't think it's consistent, it's not consistent with the JCA, to say that the parents' rights kick in at the custodial stage. First of all, we have the language of Section 1-5 that says, that makes the parents necessary parties to a delinquency proceeding from the get-go. They're to be named in the petition, they're to be served. When we look at the language of that section, they have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records, and to be represented by counsel. It is contemplated that parents will be in from the onset of the proceeding, and that they will be involved in that process. You know, we have a 17-year-old minor here, and he was represented by counsel, and it's his right to make his decision on a guilty plea. Would we say the same thing about a 9-year-old minor, a 10-year-old, an 11-year-old? I mean, we have 11-year-olds that get arrested for carjacking, that are caught with firearms. Would we say that they have an 11-year-old? Well, they've got a warrant, so their decision whether or not to plead guilty is their own. We don't need to worry about parental intervention. We don't think parents have rights over what the 11-year-old may think, and what he may agree with his lawyer. I don't think that's what the JCA is all about. And I think from the express language of the JCA, we want parents involved in the process. We make them necessary parties. We want them there at every step. At the very least, it would be within the trial judge's discretion to decline to say the plea. Absolutely. Absolutely. No reasonable judge in this circumstance would kick it over for two days, kick the case over for two days to get the parents in there. That's what happened. He was arrested late Thursday, he was in court early Friday, and they came back on Monday with the parents. But he's represented by counsel. Certainly. So isn't counsel equipped to help him make that decision? Sure. Sure, counsel is equipped to help him. But the JCA says not only do you get counsel, you get the advocacy of your parents. We want your parents involved in this process. Are the parents involved to advocate on behalf of the child, or are they involved because they have a parental right to the custody of the child, which may or may not be consistent. They may be competing interests. Well, I think the advantage starts from the presumption that they would have the best interest of the minor. And top of mind, they would be acting at the best interest of the minor. But to get back to your main point, they're wrong as precisely as an advocate. I mean, look at the case where I talk about the parents are deemed the advocate most passionate for the, most devoted to the child, above, over and above even an attorney. And we know, I mean, the attorney's obligation to be zealous, we know that that creates a strong, powerful advocacy bond on behalf of the represented party. But I think the JCA contemplates and our legislator says that something even stronger than that is the parental bond. True, that may not hold in every case. It may not obtain in certain situations. There may be splits. There may be estrangement from each other. Or if you look at, for comparison's sake, the dissolution of marriage statute, as well as the child protection, clearly delineate the parental interest as being different from the child's interest. Much different scenarios. Much different setting. There, here, we're talking about a child who's been accused in an offense, is now undergoing misproceedings that can result in an adjudication of delinquency, of incarceration, albeit in a juvenile detention center. This is a whole different scenario. And so there's a whole different set of policies that come into play and that are brought to bear by the JCA. And among those, and the case law talks about, indeed, the role of the parent as advocate, the truest advocate for the child. And certainly that is the ideal situation, and certainly it doesn't always obtain. But we start from that premise. And that's why one of the obligations that JCA puts on judges is to probe that somewhat, to make sure to get everybody in there and make sure that, you know, the interests align as appropriate if there are problems identified. You would concede that there is nothing in the law that would prohibit a trial judge from taking a plea in the absence of the parent. I would not concede that. Because the due process rights of the child and the parents, or the minor and the parents, are intertwined. It's like one big ball of due process rights. They are not separable and severable. The parents' rights, again, they don't kick in at considerable. They kick in right from the onset of the filing of the petition. That's why we require, as soon as the petition is filed, summons be placed, and the parents are called, commanded in the summons, they shall be required to appear and answer the petition on the date set for the adjudicatory hearing, the finding of guilt. It doesn't say they have to come in and show up for the custodial phase. They say the adjudicatory hearing, which is the trial, which is where a plea would be, where we would take a plea or end up with a finding of guilty. And the case law has recognized that union of rights. And indeed, I think it was MW, one of the claims, one of the arguments made by the petitioner there was, hey, proper notice wasn't given to my father about the amended petition, and that was deemed to be way, but that would have been the argument. And we'd be here if the court took the plea, and we still end up with a VJO, or there's some issue to complain about, the argument would be, hey, your honors, this plea never should have been taken, or this adjudication never should have gone forward because the parents weren't there, and the minor has a due process right to parental involvement. And indeed, under the JCA, the minor has just that, a due process right to parental involvement. Why else would we make them a necessary party? And those rights, I think, again, it's not a jurisdiction issue, but you're saying it's a due process issue. Right, and well, so jurisdiction ties into due process in the sense that due process requires that a court have personal jurisdiction over a party before it may enter an order, or a judgment that may affect its rights, that party's rights. We don't need to decide that in this case because I think the parties seem to be in agreement that the absence of personal jurisdiction over the parents is something that the trial judge in the exercise of his discretion can certainly consider. Right. And so whether or not there is an absolute necessity to have the parents in every case, do we really need to go that far to decide this case? Precisely. In my preparation, I was thinking, what is my first line? You know, this is a may case, not a must case. It's about what may the court do, not must it enter a plea. And I was going to say something like, you know, the jurisdiction issue is a distraction, but I thought, why be too clever by half? But the truth of the matter is, this case is not about jurisdiction. It's about discretion and whether or not that discretion was abused. Was it reasonable for the court to say, let's put the brakes on? I see what you're trying to do. You're talking about gamesmanship, right? The lawyer here comes in and says, uh-oh, plead not guilty. Then we go and get a probable cause, find it guilty. We want to plead guilty now. We want to avoid the VJL. Why? Why? I mean, counsel's argument here, this guy should have had a chance to get services. Well, if you want him to get services, then why are you fighting the VJL? He's going to get services. And we know he's going to get them this time because last time he cut his bracelet off. But this was gamesmanship by the defense lawyer. Hey, I can get a better result for my client. Well, isn't that what they're supposed to do? Well, you know, see, that's the interesting thing here is really what is the better result? The JCA is, again, we're not talking about criminal statutes. While we can presume it on the adult criminal side that a sentence of seven years would be better than a sentence of 20, or, you know, probation would be better than incarceration, can we always assume that in the JCA setting? No, because there's a whole analysis done. Is wardship appropriate? Is detention appropriate? We're always looking at and asking the question, what's in the best interest of the minor? And what the VJL does, statute, it adds in another ring, but we have to ask another question. What's in the interest of society? Does society need protection from this particular juvenile because of their displayed violent behavior? So if there are no further questions, I would ask for the reasons we've gone over that the circuit court's judgment be affirmed. Thank you. I'll begin where counsel left off with respect to the first issue. I first want to acknowledge that while the juvenile system is separate and apart from the criminal system, our courts have acknowledged that almost every constitutional protection that is provided to defendants in criminal court are now provided by the juvenile court. And in reality, the proceedings are quite similar. I also want to address counsel's argument that this was not about jurisdiction. That's precisely why the court refused to accept the plea, is for lack of jurisdiction. Well, a trial judge could be given wrong reason but get the right result. So the fact that the trial judge thought it was a subject matter jurisdiction issue when in fact it was a personal jurisdiction issue, it's immaterial, right? Yes, the judge did wrongly state that it was a subject matter jurisdictional issue, but it also was not a personal jurisdictional issue as I think the Illinois Supreme Court clarified in NRAMW that personal jurisdiction over the minor is obtained when the minor appears in court, and there was personal jurisdiction over SR, and that's all that was required. There was a lack of personal jurisdiction over the parents, and they played an important part in the juvenile proceedings. Yes, there was no personal jurisdiction over the parent, but as I think this court has already acknowledged that requirement, it happens down the line at the adjudicatory phase when there's a custodial interest at stake. Here, what we have is what the court stated its reasons for rejecting the plea. Again, put aside what the court said. You acknowledge it's a discretionary decision, so I just don't know how you get around that standard view. I mean, the court did what presumably any reasonable judge would do. You know, you've appeared before me. You know, you were picked up yesterday. You appeared before me today. You want to plead guilty. I want to get the parents. I can't imagine a judge who would not follow that course. I know I keep returning to the question of jurisdiction. I know, but... Let's assume the judge is wrong about his reason, his rationale. Right? We don't focus on the rationale. We have a body of law that we're looking at. We're not writing for just this case. We're writing for the future. That's true, but here the judge didn't actually recognize that it had destruction. It's reasoning suggested that the court believed his hands were tied because of the jurisdiction, and so he didn't. On the motion to reconsider, he gave a pretty clear reason. He said, so in my belief, I needed the parent's involvement to be present, to be aware, to give him guidance, even though he gets legal advice from an attorney. He absolutely has the right to plead guilty if he wants. He does so long as a parent or someone else, in my mind, a parent has been given notice and service, and that wasn't the case here. Yes, and then the judge went on to say that it had concerns about jurisdiction, and so that's basically the reason why I don't want the minor to plead guilty. And so the court didn't actually think it had discretion, and not recognizing that a judge has discretion is an abuse of discretion because it's not based in the law and not based in reason. And that's what happened here, and that's why we asked this court to find that the court did abuse its discretion because it didn't actually recognize that it could exercise discretion because they thought its hands were tied because of the jurisdiction issue. But the court specifically said, I want the parents here to give them guidance, which is ultimately what this all boils down to, right? You want the parents there to guide and advise and talk through these issues. The second set of ears, the most trusted ears, right? I think that premise supposes that the parents' interests are aligned with the child's. Right, and usually they are, right? It may have been in outlier cases where they're not. I would hope that they were, but it's certainly not required like an attorney-client relationship where SR's attorney was ethically bound to zealously advocate for the interests of her client. And the parent appeared on Monday, right? The parent appeared at the subsequent court date, but there's no authority that requires a minor to consult with the parent to take the parent's advice. Frankly, the child doesn't even have to take the attorney's advice because the decision to plead guilty lies with the accused, and the accused alone. The statute's permissive, right? The statute says the trial court may accept a guilty plea. It vests the court with discretion. And I agree with that. That's why we're functioning under an abuse of discretion standard. But the courts have found an abuse of discretion. It was People v. Allen where the court found that the court abused discretion for denying a guilty plea simply because the defendant wanted to plead on the day of trial. And the court didn't want that. And that's an abuse of discretion. We're asking the court to find an abuse of discretion here as well. Counsel, would you make the same argument as opposing counsel gave the hypothetical or suggestion if the defendant was an 11-year-old? Unfortunately, minors that young can be charged in this state. And if the state chooses to make that decision and subject the minor to delinquency proceedings, the Juvenile Court Act makes very clear, and In re Gault makes very clear, that that minor cannot be in any juvenile proceeding without representation by an attorney. And that is how we safeguard minors. And that attorney is ethically required to zealously represent that minor, and that's what Illinois Court, what our legislature has found to be sufficient to protect the rights of that minor. And their goals will also always be aligned because of the position of the lawyer. In your earlier argument, you kept using the term or the word final with respect to the predicate offense. And I'd like for you to just refresh my recollection with respect to the predicate offense. In this case, had the child been adjudicated a ward or the juvenile been adjudicated a ward of the court at that point? When the notice was filed, no. And that's the critical stage for VJO proceedings because once we're in kind of a VJO world, then the sentence is mandatory. And so when counsel... But the sentences in what you refer to in your brief as a third stage, or third phase, the dispositional. Yes. Okay. But the statute, as counsel pointed out, says adjudicated ward of the court. The adjudication is the second phase. So I want to be clear that in the other case, he had entered the plea, but had they moved to the second phase? Had not. The adjudication. Had not. And the case law, there's various case law discussing the three phases, and often the adjudicatory phase and the dispositional phase happens at the sentencing hearing. So while it's one hearing, it's technically two phases. So I don't know if that helps clarify some of the confusion.  I want to make sure that we're saying final, we're saying dispositional, we're referring. You're actually including adjudication. Yes. In this case, there had been no adjudication of wardship and no final disposition or no sentence.  So just phase one. Yes. And counsel indicated that the aims of rehabilitation remain with the VJO statute under their interpretation in allowing these admissions of guilt to be sufficient. But that cannot be true in cases where, say, there's a guilty plea and the matter is pending sentencing, there has been no adjudication of wardship or disposition, and the state files a VJO notice. But it's an inapt analogy to compare it to adult criminal court because throughout the juvenile proceedings, the trial judge has extraordinary flexibility, right? And he doesn't have to impose the VJO sentence at the later phase, right? He can, in an exercise of his discretion, decline to do that because it's not in the best interest of the child. True? If the court finds that, well, it's technically a separate decision. So at the adjudicatory phase, the court is deciding whether it's in the best interest of the minor to be made a ward of the court, for the court to make decisions about its custodial status and whether the parent is unfit to do that, right? So that's decision. But once there is, in order even to sentence a minor to probation, that finding has to be made. It's then at sentencing that discretion is gone for VJOs. And I think recognizing that the state's interpretation would allow minors to be sentenced as a VJO for the first time without the predicate being reaching sentencing shows that this interpretation takes away rehabilitation out of the picture, as it doesn't require it. And that's what NRA MG, in upholding the VJO statute, found that it was critical that the minor not only have a rehabilitative opportunity, but that the judge have discretion on the predicate case. But didn't NRA SP specifically point the other way? It went the other way, and that's because it was regarding the HJO statute. And in that case, the minor actually had been adjudicated a ward of the court in the predicates before. In this case, they had not. And I think because there's two predicates in the HJO statute and only one in the VJO, there was at least one date in which the adjudication of wardship happened in SP, but here there wasn't. There's only one predicate. And so to not require that that predicate reach a final disposition deprives a minor of a full delinquency process in that case. If there's no further questions, for all the reasons stated in our brief, we ask the court to grant relief. Thank you. Thank you, counsel, for outstanding arguments and an excellent briefing. You've given us a lot to think about, and the minor will be taken under advisement for studying.